May it please the Court. Gordon Greenberg on behalf of Dr. Samueli. With the Court's permission, I'd like to reserve two minutes for rebuttal. Thank you. Watch the clock. Thank you, Your Honor. After two years of detailed analysis of the facts and additional discussions with the government concerning those facts, the parties got together and reached an agreement here. As the Court knows, that agreement concerned a Rule 11 plea to a single count of making a false statement that was made during the course of Dr. Samueli's testimony two days worth of testimony before the SEC. Now, in rejecting that agreement, the Court committed two serious errors that this Court has jurisdiction to consider now. First, as a matter of law, the Court determined that it could reject the parties' agreement based solely on allegations. Allegations in which the prosecutor had candidly conceded to the probation officer allegations concerning backdating and security fraud, allegations that the prosecutor candidly conceded to the probation officer, it could not prove as to Dr. Samueli. Beyond a reasonable doubt. Is that correct? Frankly, Your Honor, it didn't say beyond a reasonable doubt. Well, I know they didn't say that, but when a prosecutor says I can't prove up my case, he says I can't prove beyond a reasonable doubt, doesn't he? I would suggest, Mr. Honor, for a full recitation of the prosecutor's view of the weaknesses of its case. I'm just asking a question. He says we can't prove it. That's a standard, and there are weaknesses. I seem to recall that sometimes on sentencing, people can use a lower standard of proof. Am I correct? You're absolutely correct, Your Honor. And, indeed, the government, in arguing that the court, the district court, shouldn't consider unindicted co-conspirator allegations, it candidly stated to the court that there was no probable cause or evidence to support those in the process. So when the government, in essence, states there is no evidence in this record, I think we can rely upon that to agree. But, more importantly, the court went on to presume certain facts that placed an obligation on Dr. Samueli to testify. First, the court determined that. Counsel, counsel, I've got a question. What's on my mind is, why isn't the rejection of the plea an interlocutory order that's not appealable at this time? You know, what's your basis for arguing that comes under the collateral order doctrine? It's cumulative. I'll deal with the first issue that I was about to address, which is the attorney-client privilege issue that was dealt with in Bidiker. Here we have a Fifth Amendment constitutional privilege. The court determined that Dr. Samueli should have been under an obligation to testify for the government. Without fabs, it determined that he would provide, quote, And the court didn't even say that if he doesn't do so, I'm going to whack him. The court didn't say that. As stated, that way, he didn't. But I have to say, in the world that we live in, that you have to look very carefully and analyze it from a reasonable person's standpoint of what the court did say. But, counsel, this is an 11C1C plea. Those pleas don't come about on a daily basis. They are very specific, and the court advises in the plea colloquy that before it accepts or rejects this plea, it will have the opportunity to review a lot of information before deciding. And if the court decides to reject that plea, that the defendant is advised that they may continue with the plea, in which case there may be a less favorable outcome, or they may withdraw the plea. So there's no question that this wasn't a final determination. It was still the plea is accepted conditionally. And you've said, and I think that Judge Fernandez and Judge Gould are hitting on the same thing, which is that there's been no real determination. The district judge in this case listed a number of factors that were being considered as to why the judge wished to reject it. He didn't say that you have to testify, that you have to incriminate your Fifth Amendment. He simply said, I don't believe that I want to accept it under the circumstances, some of which may have been required under 3553A, the statutory sentencing factors. And with that being said, he simply gave the opportunity to your client to decide what to do. So where's the final order, decision, judgment, and requirement that he do something or not do something that may impact his Fifth Amendment rights? Biddeker is the case that we rely upon and is very compelling, but not as compelling as the facts of this case. In Biddeker, the Court had to decide whether a future waiver of attorney-client privilege by a habeas petitioner was something that this Court could consider. Indeed, in Biddeker, he was arguing an ineffective assistance of counsel. And to do that, he actually had to waive the attorney-client privilege. And the question was, will the government be able to use that privilege against him? Here in our circumstance, the Court has indicated it believes that Dr. Sanwelly should be obligated to testify. It's indicated that he should be obligated to testify, as it said, in the upcoming trial against what the Court believed were the co-conspirators, Mr. Rooley and Dr. Nicholas. That trial is scheduled to take place in October of this year. That issue is more ripe and present and needing of this Court's relief than what Biddeker faced in a situation in which Biddeker was trying to protect an attorney-client privilege that he had to waive. This is a constitutional privilege. And what the Court said was, you know, courts see plea agreements all the time, and quite frequently they have cooperation agreements in them, which is always a problem when they get to testify, but that's another question. They have cooperation agreements. All the Court's saying is, this is the wistiest-looking plea agreement deal I've ever seen. This guy's getting off on a 101, and that's fine. I mean, I can't and won't interfere with that part. But, you know, there's a lot of facts in front of him, a lot of information in front of him that makes me uneasy. There are a lot of other people who are going to get whacked, might get whacked really hard. This is really a serious problem, this whole area that the company was engaged in. He said all those things. And he doesn't have to cooperate. He said a whole lot of things. All he really said at the end, at the bottom line, if you read it, he says, look, I just don't think that accepting this at this time will – well, he rejected it. Accepting it will indeed promote justice, et cetera. I'm not going to do it. That's all. He didn't say, you've got to do this, you've got to do that, you've got to do something else. He said, I'm going to wait. Let's see what happens. What? He did say that, Your Honor, but he said so based on no facts. And I can – I agree there is an important role for the judiciary in reviewing 11C agreements. And indeed, Judge Gould, in your dissent, and Ellis dealt with that there's a lack of clarity in the law about what the exact role is of a judge. My point is that the judge exceeded his role in two ways here, though. One, under Morgan, this Court expressly said that you should look at the individual facts and circumstances as they related to the defendant, which the Court candidly conceded, very important from excerpt of record, 232 and 236, that it did not consider, that it considered only the allegations. And second of all, it stepped outside the bounds of a court in terms of stating that Dr. Samueli should be obligated to testify, whether that was his individual ruling at that time and put the matter to rest from the court's perspective. We can't ignore the fact that the district court in which we're – our case is pending has expressed very strong views, which is the standard for reassignment, very strong views with regard to an obligation to testify, not based on facts, against certain individuals. It's sort of a who, what, and where of what Dr. Samueli should do in exchange for leniency. And that, when the Court made that determination, and whether it intended to do so or not, in good faith, I could see that the Court may not have – may have been trying to provide the path to leniency. But the reality is it created undue pressure on Dr. Samueli. That's a ripe issue for this Court to consider now. You don't know what's going to happen because, as a district court judge, you're required to put your reasoning on the record. There was no firm determination as to whether or not he should testify, should not testify. It was liable at all. Dr. Samueli had the ability to accept or reject. That was still in his hand. He decided which way he wanted to do it. The district judge was simply trying to lay a record as to what the thoughts were at the time, so that in rejecting the 11C1C plea agreement, there was a basis for that rejection. For all we know, had this case gone to trial, which is why I still go back to Judge Gould's comment, is that why are you here? Is there really jurisdiction yet? This case could go to trial. And he may, in fact, receive a sentence that is the same as what was bargained for or could even theoretically be even more lenient. So how is it final? How has there been an injury at this point in time when we don't simply know what's happened? How do you get to this Court at this stage of the game, based upon the judges making a record, if you will? The injury is now, in terms of paying very close attention to the strong views expressed by the Court, that it had, that Dr. Samueli had that obligation to go forward and testify. We can't, in fact, indeed, we can't wait until April of sentencing if it should happen that way. We have an October trial date that we have to deal with now to make that decision. It's the pressure that exists now on that privilege, which is greater than the pressure that Mr. Bideker faced, in which an en banc panelist, excuse me, I'm sorry. Counsel, let's assume for a minute, please, that he decides for whatever reason to cooperate. Then that issue goes away. Well, let's assume he decides not to cooperate. And then the judge still gives him a lenient sentence. So what's the issue then? Well, if he decides not to cooperate and he gets a horrible sentence, can't you appeal that at that time? The issue is what the issue is in Bideker in terms of pressure on the privilege. Ultimately here, whether he gets a sentence of probation or whether, as Judge Fernandez describes it, he gets slammed, the separate issue of having a Fifth Amendment privilege and not to have that cited by the Court as a consideration for leniency, which is what this Court has repeatedly stated is improper for district courts to do in cases such as Saperstein, Messer, Bruce, et al., just even mentioning that there might be a tradeoff of leniency in exchange for a Fifth Amendment privilege is air. And what we're left with here is something that is air as it exists on the record here. In Foy, a case I believe, Judge Gould, you're familiar with as it related to the Ellis case, was argued at great length. Foy is a Fifth Circuit case in which it's the most lenient standard to a district court in terms of being able to reject a plea. It's not consistent, frankly, my view of this Court's view that you have to look at the individualized facts and circumstances of the case. In Foy, the Court took the view that the judge, having mentioned that the dependent should have been cooperating for the prosecution, was reason enough to send the case back after a trial. It was a plea agreement. All the parties agreed. It was rejected like we're talking about here potentially. They went to trial. The judge didn't state anywhere nearly as strongly as the Court did here about an obligation to testify and the Court's view with regarding that obligation, who it should be against and the like. So what we're saying in sum, and I see I'm getting close to the end of my time here. I'd like to reserve the remainder if I may. What we're saying in sum, the Court has a role, but it exceeded its role in terms of the Fifth Amendment privilege here. And it didn't meet its role in terms of Morgan in analyzing the individual facts and circumstances as it related to Dr. Samueli. Instead, relied upon unreliable allegations that the government itself conceded it could not prove these allegations. And that's what we're arguing here. We're arguing that the government itself did not say below that it could not prove these allegations. It pointed out to the Court that there were proof issues in the case, but did not say    Thank you. And in fact, as the Court noted, there were allegations in the indictment regarding Dr. Samueli's conduct. So with that, what I'd like to turn to first is, as the Court has noted, the government's initial position is that there is no appellate jurisdiction here. And that's because there simply is nothing final that can be found in the indictment that cannot be addressed in an appeal from a final judgment and sentence. The decision for life. So how do you answer appellant's argument that there's pressure on the privilege? I disagree with that. I think what the Court was doing, and if you read the Court's order and if you read the Court's comments at the two hearings closely, what you'll see the Court was doing was applying this Court's decisions in Morgan and Miller to consider all of the circumstances. In this case, it was confronted with a plea bargain that was both a charge and a sentence bargain. In other words, the government had agreed to dismiss certain charges and agreed to a specific sentence. And the Court, in considering that, looked to a number of factors. One of those relevant factors was, A, the overall sentence that the government was asking for, and it was in assessing the leniency of that sentence that the Court effectively said, look, if I look at lenient sentences, one of the things that can justify lenient sentences is cooperation. There's no requirement for cooperation here. So there's not that to reduce this. And in doing that, I think it's important to remember the Court had before it another defendant, Ms. Tullis, who had pled guilty, received a lenient reduction in sentence, although not as big as Dr. Samueli, in return for cooperation. So when you read the Court's order, it was looking at and, in effect, comparing Dr. Samueli to the other defendants, including Ms. Tullis, and saying, look, there's nothing like the government did for Ms. Tullis to justify the leniency here. There was in no way an order or anything saying, you know, if you don't cooperate, I'm going to slam you, or you have to cooperate. There's nothing there. And if you look at the Court's language, it's very careful. It notes that, you know, at the trial, there's a presumption of innocence. These allegations may turn out not to be true. And, indeed, says quite bluntly at the final hearing in this case, both at the hearing on September 8th and at the hearing on October 14th, you know, after the trial, if the sentence doesn't have to be different than as alleged, then the sentence that the parties have agreed on may be perfectly okay. So, again, the Court recognized that cooperation was not the only thing that might reduce the sentence. It was looking overall at whether this was a case that was in the interest of justice. And that's precisely what Morgan and Miller say. And while that gets to the merits, you know, again, what Morgan and Miller say is the defense doesn't say, and I think this is very important to remember, and this is one problem with the defense's arguments, the defense conflates sentencing cases and cases rejecting plea agreements. At sentencing, of course, the Court has to make factual determinations, and it has to do that based on generally either a preponderance of the evidence or clear and convincing evidence. In this case, however, the Court was not actually sentencing. The Court was rejecting a plea agreement. And what the Court essentially was doing was saying, look, I have all of these allegations out there. I have extensive allegations in an SEC complaint and in an indictment. I don't have all the facts before me to resolve these now, but if those allegations are true, and the Court said that three times, if those allegations are true, then this appears too lenient. I think that's entirely appropriate under this Court's decisions in Morgan and Miller and, indeed, under the decision in Ellis. In Ellis, one of the things that the Court looked to was the indictment against the dependent, the underlying indictment that charged first-degree murder, even though that hadn't been proven, even though it hadn't heard all the facts of that and said, simply based on that, this plea agreement before me, second-degree murder, is too lenient. But putting that aside, going back to jurisdiction for a moment, the other case I wanted to address was the Bitteker case and this claim that there's a coercion of the Fifth Amendment right and that that grants interlocutory jurisdiction under the collateral order doctrine in Bitteker. Bitteker is a case that effectively extends this Court's cases that have said there is interlocutory jurisdiction over an order that compels disclosure of attorney-client privileged information. Bitteker goes one step forward and said, not only are we going to allow interlocutory jurisdiction over an order that compels production of attorney-client privileged information, but also over a protective order that limits the disclosure of attorney-client privileged information. Now, that's an extension of interlocutory jurisdiction, and it's not present here. In other words, we don't have here any order by the district court that either compels or limits the disclosure of privileged information. We simply don't have an order. The Court has rejected a plea agreement and in doing that has discussed cooperation as one potential factor. It has in no way compelled or limited the production of privileged information, whether that be Fifth Amendment privileged information or any other privileged information. I should also note, clearly enough, though, the Court has rejected the sentence bargain. The Court has rejected the sentence bargain. I mean, that part's clear. Yes. And if it had said we reject the sentence bargain because we don't approve sentence bargains, period, that would be a Morgan case. That would be the Morgan case, but that is not this case. And if the Court had rejected it, and this is the Foy case, if the Court had rejected the sentence bargain, had rejected the plea bargain here saying I'm rejecting this bargain because, Dr. Samueli, you haven't stood up in front of me and admitted all this conduct, that would be the Foy case and that would be improper, too, because then the Court would be conditioning the rejection on the Fifth Amendment privilege. But that, too, is not this case. The Court nowhere said that. Now, there's some suggestion that he might get the same, he could get the same thing at sentencing. Could he? Absolutely, Your Honor. The Court lacked that authority. How would the Court impose the monetary part? The monetary part was not part of the sentence in this case, the monetary part. The $12 million part? The $12 million part was not part of the sentence. In other words, the plea agreement that was structured between the parties. I understand the Court, but it was made quite clear because the district court asked that same question. The maximum statutory fine here is $250,000. Correct. So it was clear that the Court could not impose a $12 million fine as part of the sentence. The parties made clear to the Court, and this is in the record at the various hearings, I don't have the exact site here, but the Court questioned that and the parties made clear that that was simply a separate contractual term between the parties. It was not going to be part of the sentence. So plea or no plea, he'll pay over that much money. If, in fact, this goes forward and the agreement between the parties holds. Well, that's a very interesting statement. You just made. That's not an issue here. That might be a separate issue. Again, if and when this case goes to sentencing and the defendant for some reason challenges it, you know, that, too, might be something that the Court could address. But here we have an order that is not final in any way. There is nothing that the defendant hasn't. And in particular, the defendant retains the choice either to go to trial or not. So there hasn't been a denial of the right not to go to trial. And, in fact, the defendant exercised his right to maintain his guilty plea, precisely what Ellis said he had to do. There is no the defendant retaining the choice to cooperate or not, and he can choose to or not. And if, in fact, he chooses not to and it's sentencing, the Court says, I'm going to sentence you more heavily because you didn't cooperate, he'll have the right to appeal that, which would put him in exactly the same position as the defendants in the sentencing cases he relies on, Saperstein, Messer, et cetera. So, again, there is nothing final here. That would dispose of this case. If the Court does get to the merits, for all the reasons I've stated, the Court's order, in fact, complied with Morgan and Miller. It looked to the individual facts of this case. It did not impose the type of categorical denial. The defendant's position appears to be that you can't look to allegations, that you have to make finding of the fact before rejecting a plea agreement. And I don't think there's any basis for that. Ellis looked to a charge. Both Bean and Smith out of the Fifth Circuit looked to pending charges, uncharged criminal conduct, the totality of facts and circumstances that a court considering a plea agreement is entitled to look to. On the claim that there's been coercion of the Fifth Amendment rights, again, I've addressed that. There's nothing there. So whether the Court decides it on jurisdiction or merits, I think it has to affirm the district court's order and or dismiss this appeal. And with that, if the Court has no questions, I'll submit. Thank you, counsel. Thank you. The Court's indulgence, two minutes for rebuttal, if I may, please. I think it says 55 seconds. Go ahead. Specifically, what we're talking about in the Court's order is this language, which leads to certain results. It's the Court saying that Dr. Sandler, noting that he's not obligated to testify and cooperate with the U.S. Attorney's Office, and then indicating that Dr. Samueli's testimony about these events and practices would aid the U.S. Attorney's prosecution tremendously, yet he is under no obligation to testify. In fact, his counsel has stated in open court that he may invoke the Fifth Amendment if called to testify, as is his right. Proving a lenient agreement without any provision for cooperation by Dr. Samueli, the Fifth Amendment has never been about efficiency or respect for the judiciary. It is clear in the real world that we live in here that the Court wanted Dr. Samueli and was sending a very strong message to him that he should cooperate and testify for the government without knowing the facts of the case.  And indeed, he cannot meet the Court's desires in this case. And indeed, going back to the Morgan point, we looked at the Morgan case before we entered our plea in this matter very carefully and relied upon it. In Morgan, the Court said you should rely on individual facts and circumstances the Court should before rejecting a plea. And indeed, since the Court below did not do that, this Court exercised jurisdiction and remanded with instructions to follow that dictate. Thank you, Your Honor. Thank you, Counsel. This matter will stand submitted. We appreciate argument from both counsels. And we'll take a brief 10-minute recess at this point before taking up the last case on the calendar. All rise.
judges: Fernandez, Gould, England